1
2
3
4
5
6
7
8               **IN THE UNITED STATES DISTRICT COURT**
9             **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11
12 ERNIE ALTMANN, et al.,              CASE NO. CV F 11-0984 LJO SMS

13          Plaintiffs,           **ORDER ON F.R.Civ.P. 12 MOTIONS TO**
                               **DISMISS AND ON F.R.Civ.P. 11 SANCTIONS**
14     vs.                       (Docs. 21, 22.)

15 HOMESTEAD MORTGAGE INCOME
FUND, LLC, et al.,

16          Defendants.

17 _____/

18                   **INTRODUCTION**

19       Several lender and related defendants seek to dismiss in the absence of this Court's jurisdiction

20 and as legally barred plaintiffs Ernie Altmann ("Mr. Altmann") and Creative Builders, Inc.'s ("CBI's")

21 California statutory and common law claims arising out of Mr. Altmann's construction loan for a

22 Stanislaus County property ("property").  The moving defendants further to seek to impose F.R.Civ.P.

23 11(c)(2) sanctions of $14,466.38 against Mr. Altmann and CBI (collectively "plaintiffs") in that

24 plaintiffs' claims are frivolous.  Plaintiffs filed no timely opposition to the motions to dismiss and for

25 sanctions.  This Court considered  defendants' F.R.Civ.P. 12(b)(1) and (6) motions to dismiss and

26 F.R.Civ.P. 11(c)(2) sanctions motion on the record and VACATES the May 31, 2012 and June 8, 2012

27 hearings, pursuant to Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES this

28 action and IMPOSES on plaintiffs' counsel a $6,888.38 sanction.

# BACKGROUND[1]

## The Property

The property comprises two parcels with street addresses of 16413 Sonora Road and 16419 Sonora Road in Knights Ferry, Stanislaus County, California.  Although the property has two street addresses, it has a single legal description and single assessor's parcel number ("APN").  The SAC alleges that Mr. Altmann had owned both parcels and that CBI was title owner of 16413 Sonora Road.

## Mr. Altmann's Loan

In April 2007, Mr. Altmann, a then general contractor, obtained a $1,205,000 construction loan from defendant Homestead Mortgage Income Fund, LLC ("Homestead"), a California limited liability company.  Private Money Brokers ("Brokers") of Gilroy, California was the referring broker for Mr. Altmann's loan.  The loan was secured by a deed of trust of which defendant FCI Lender Services ("FCI"), a California business, was beneficiary.  Defendant National Investment Mortgage Fund, LLC ("National Fund"), a California limited liability company, serviced and acquired an interest in the loan.  Defendant Real Estate Lending Group, Inc. ("RELG") is the manager of Homestead and National Fund.  Defendant Steven Belleville ("Mr. Belleville") is a RELG officer.[2]

At the time of signing the construction loan documents, the property was unimproved with incomplete construction.  The loan had a two-year term and provided funds to complete, remodel and expand the house structure and four-car garage.

Mr. Altmann's April 5, 2007 application indicated the loan was for investment.  Mr. Altmann signed an April 5, 2007 Occupancy and Financial Status Affidavit to address property occupancy:

> Investment.  The Property is owned and held by Borrower as an investment property.  Borrower does not occupy or use the property, and has no present intention to occupy or use the Property in the future, either as Borrower's principal residence or second home.  Borrower now occupies and uses other property or properties as Borrower's principal residence and/or second home.

---

[1]     The factual recitation is derived generally from plaintiffs' Second Amended Complaint ("SAC"), the target of defendants' challenges, as well as matters subject to judicial notice.

[2]     Homestead, National Fund, FCI, RELG and Mr. Belleville pursue the motions subject to this order and will be referred to collectively as the "lender defendants."  The SAC also names as defendants Brokers, Builders Control, LLC ("Builders Control"), a California limited liability company, and RSVP Foreclosures, a Concord, California business.  Neither Brokers, Builders Control nor RSVP Foreclosures have appeared in this action.

2

1   Loan funds were distributed pursuant to milestones determined by Builders Control.   In

2   December 2007, National Fund acquired a 50 percent interest in Mr. Altmann's loan.

3   **Loan Modification**

4   In April 2008, Mr. Altmann's loan was modified to an increased $1,215,000 principal.  Mr.

5   Altmann's April 4, 2008 application indicated the loan was for investment. Mr. Altmann's April 4, 2008

6   Occupancy and Financial Status Affidavit included the same statements as his prior affidavit that the

7   property was investment property which Mr. Altmann did not occupy and did not intend to occupy.

8   **Forbearance Agreements And Foreclosure**

9   As of July 22, 2008, Mr. Altmann had listed the property to sell for $2,195,000.  Mr. Altmann

10  was unable to sell the property and began to occupy the property.

11  Mr. Altmann requested Homestead and National Fund to forbear property foreclosure and to

12  accept reduced payments.  His request resulted in a September 1, 2008 forbearance agreement.  In July

13  2009, Mr. Altmann, Homestead and National Fund entered into an addendum to the forbearance

14  agreement for Mr. Altmann's further reduced payments.

15  After Mr. Altmann ceased making payments, FCI conducted a May 4, 2010 trustee's sale of the

16  property by which the property reverted to Homestead, which later sold the property to current owners

17  Miguel and Gloria Olivo (the "Olivos").

18  **Mr. Altmann's Claims In This Action**

19  The SAC alleges that this action "arises out of the origination of loans to Plaintiff Altmann and

20  the wrongful foreclosure of both parcels that comprise the Property."  The SAC claims that Mr.

21  Altmann's loans "were memorialized in Promissory Notes which were secured by a Deeds [sic] of Trust

22  on 16419 Sonora Road only."  The SAC alleges that CBI built a large second residence with a separate

23  16413 Sonora Road address on which CBI had no loans or encumbrances.  The SAC claims that

24  Homestead's loan "was made only to Altmann and only for 16419 Sonora Road" and that "the second

25  home owned by Plaintiff CBI was not part of Defendant Homestead's loan to Altmann."  The SAC

26  alleges that the trustee's sale notice and sales deed list only Mr. Altmann's 16419 Sonora Road home,

27  not the 16413 Sonora Road home owned by CBI, to result in wrongful foreclosure of 16413 Sonora

28  Road.

1    The SAC alleges a negligence claim, three wrongful foreclosure claims, and a wrongful eviction

2    claim which assert essentially that the lender defendants had no right to foreclose on CBI's 16413

3    Sonora Road.  The SAC alleges a breach of contract claim that Brokers and Homestead failed to provide

4    Mr. Altmann an affordable loan, failed to finance his loan, and forced Mr. Altmann into foreclosure.

5    The SAC includes a constructive fraud claim that Brokers and Homestead gained advantage by

6    deceiving Mr. Altmann into "a mortgage transaction," "misinformed" loan terms, and "extended credit

7    to Altmann without regard to his ability to pay."

8                                      **Plaintiffs' Other Litigation**

9    On August 25, 2010, Mr. Altmann had filed a Stanislaus County Superior Court action ("first

10   state action") against Homestead, FCI, and others to challenge foreclosure of the property.  Mr. Altmann

11   did not serve Homestead and FCI with the first state court action, and Homestead and FCI took action

12   to expunge the lis pendens associated with the first state action.  In June 2011, Mr. Altmann dismissed

13   the first state action and withdrew the lis pendens to allow the property sale to the Olivos.[3]

14   Shortly after dismissing the first state court action, plaintiffs filed this federal action on June 14,

15   2011 through counsel John Villines ("Mr. Villines").  Plaintiffs filed their first amended complaint on

16   June 27, 2011 and were granted leave to file the SAC, which plaintiffs filed on March 6, 2012.  The

17   lending defendants were served shortly thereafter and filed their pending F.R.Civ.P. 12 motions to

18   dismiss on March 28, 2012 and their F.R.Civ.P. 11 sanctions motion on April 25, 2012.

19   On June 22, 2011, plaintiffs filed a lis pendens in connection with this action.  The lender

20   defendants are unable to determine if the lis pendens was recorded or indexed properly.

21   On February 21, 2012, plaintiffs filed a second Stanislaus County Superior Court action against

22   the lender defendants and the Olivos to again challenge property foreclosure and the sale to the Olivos.

23   As such, the lender defendants note that plaintiffs have filed four actions against them regarding the

24   property.

25

26

----

27   [3]       On August 25, 2010, Mr. Altmann had also filed in Stanislaus County Superior Court an apparent unlawful
     eviction action ("eviction action") against the lender defendants and others and which was dismissed for lack of prosecution

28   on March 25, 2011.

## DISCUSSION

### F.R.Civ.P. 12(b)(1) Motion To Dismiss Standards

The lender defendants initially attack the SAC's failure to invoke this Court's subject matter jurisdiction based on diversity of citizenship or federal question.

F.R.Civ.P. 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction. Fundamentally, federal courts are of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 341 (1994). A "court of the United States may not grant relief absent a constitutional or valid statutory grant of jurisdiction." *U.S. v. Bravo-Diaz*, 312 F.3d 995, 997 (9th Cir. 2002). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F. 2d 1221, 1225 (9th Cir. 1989). Limits on federal jurisdiction must neither be disregarded nor evaded. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396 (1978). "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001).

When addressing an attack on the existence of subject matter jurisdiction, a court "is not restricted to the face of the pleadings." *McCarthy v. U.S.*, 850 F.2d 558, 560 (9th Cir. 1988). In such a case, a court may rely on evidence extrinsic to the pleadings and resolve factual disputes relating to jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.), *cert. denied*, 493 U.S. 993, 110 S.Ct. 541 (1989); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *Smith v. Rossotte*, 250 F.Supp.2d 1266, 1268 (D. Or. 2003) (a court "may consider evidence outside the pleadings to resolve factual disputes apart from the pleadings").

No presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts does not preclude evaluation of the merits of jurisdictional claims. *Thornhill Pub. Co., Inc. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). On a factual attack of a complaint with affidavits or other evidence, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High School*, 343 F.3d 1036, 1040, n. 2 (9th Cir. 2003).

1       When a court considers "items outside the pleading" on a F.R.Civ.P. 12(b)(1) motion, the court

2    resolves "all disputes of fact in favor of the non-movant." *Dreier v. United States*, 106 F.3d 844, 847

3    (9th Cir. 1996). The Ninth Circuit Court of Appeals explains that "where the district court has properly

4    considered items outside the complaint in considering a motion to dismiss, the standard we apply upon

5    de novo review of the record is similar to the summary judgment standard that the district court

6    purported to apply." *Drier*, 106 F.3d at 847.

7       With these standards in mind, this Court turns to the lender defendants' challenges to this Court's

8    subject matter jurisdiction.

9                          **Federal Question – Truth In Lending Act**

10       The lender defendants challenge the SAC's attempt to invoke federal question jurisdiction

11    pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., and its implementing

12    Regulation Z, 12 C.F.R. §§ 226, et seq. The lender defendants point to the SAC's absence of TILA

13    claims given its "few haphazard and unsupported allegations regarding TILA."

14                            *Damages Limitations Period*

15       The lender defendants contend that a TILA damages claim is time barred to foreclose subject

16    matter jurisdiction via TILA.

17       A TILA damages claim is subject to 15 U.S.C. § 1640(e), which provides that an action for a

18    TILA violation must proceed "within one year from the date of the occurrence of the violation." "TILA

19    requires that any claim based on an alleged failure to make material disclosures be brought within one

20    year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d

21    1176, 1183 (D. Or. 2005). The limitations period runs from the date of a transaction's consummation

22    which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v.*

23    *Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008). The Ninth

24    Circuit noted in *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

25             The failure to make the required disclosures occurred, if at all, at the time the loan
              documents were signed. The [plaintiffs] were in full possession of all information

26           relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day
              the loan papers were signed.

27

       The latest conceivable loan transaction arose with the July 2009 second forebearance agreement,

28

1    which was more than a year prior to the June 14, 2011 filing of this action.  TILA damages claims are

2    doomed along with an attempt to invoke subject matter jurisdiction under such claims.

3                                              ***TILA Exemption***

4          The lender defendants contend that Mr. Altmann's loan is exempt from TILA coverage to

5    preclude invocation of this Court's subject matter jurisdiction.

6          TILA addresses consumer credit transactions "primarily for personal, family or household

7    purposes." *See* 15 U.S.C. § 1602(i); *Thorns v. Sundance Properties*, 726 F.2d 1417, 1418 (9th Cir. 1984).

8    TILA exempts "[c]redit transactions involving extensions of credit primarily for business, commercial,

9    or agricultural purposes . . ." 15 U.S.C. § 1603(1).  Factors to determine whether credit is primarily for

10   business or commercial purposes include:

11         1.    The relationship of the borrower's primary occupation to the acquisition. The more

12               closely related, the more likely it is to be business purpose;

13         2.    The degree to which the borrower will personally manage the acquisition. The more

14               personal involvement there is, the more likely it is to be business purpose;

15         3.    The ratio of income from the acquisition to the total income of the borrower. The higher

16               the ratio, the more likely it is to be business purpose;

17         4.    The size of the transaction. The larger the transaction, the more likely it is to be business

18               purpose; and

19         5.    The borrower's statement of purpose for the loan.

20   *Thorns*, 726 F.2d at 1419.

21         The lenders defendants explain that the factors demonstrate that Mr. Altmann obtained a

22   business/commercial loan to render it exempt from TILA.  The lender defendants note that the loan was

23   "construction financing for an investment property" and that Mr. Altmann was a contractor and affirmed

24   the loan was for investment purposes.

25         The lenders defendants are correct that Mr. Altmann's loan was business/commercial.  The

26   investment loan exceeded $1.2 million to construct a large home on 38.54 acres of property for resale.

27   The loan was not for personal, family or household purposes.  The loan is exempt under TILA, and the

28   SAC lacks a TILA claim to invoke this Court's federal question jurisdiction.

                                                    7

**Diversity Jurisdiction**

The lender defendants argue that the SAC fails to invoke diversity jurisdiction under 28 U.S.C. § 1332(a) in that the parties are not "citizens of different States." The lender defendants point to SAC allegations that plaintiffs and all named defendants reside in California.

The lender defendants correctly note the SAC's absence of allegations to invoke diversity jurisdiction. No grounds are present to invoke this Court's subject matter jurisdiction.

**Supplemental Jurisdiction**

The lender defendants contend that in the SAC's absence of federal law claims, this Court lacks supplemental jurisdiction over the SAC's California statutory and common law claims.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

In *Hunter v. United Van Lines*, 746 F.2d 635, 649 (9th Cir. 1984), the Ninth Circuit explained application of supplemental jurisdiction:

> In a case between nondiverse parties, the doctrine of pendent jurisdiction provides the only basis for federal jurisdiction over a state-law claim. It has long been established, however, that that doctrine operates to allow a federal court, under certain circumstances, to decide claims over which the court does not independently have jurisdiction only if those claims are related, in given ways, to a claim over which the court does independently possess jurisdiction. . . . The federal court acquires its power over the claim otherwise beyond its cognizance only if the court has previously properly been seized of jurisdiction. The federal court's jurisdiction over the state-law claim is entirely derivative of its jurisdiction over the federal claim.
>
> . . . Because pendent jurisdiction is derivative, it makes no sense to speak of pendent jurisdiction until after a court has independently acquired jurisdiction over a federal cause of action. (Citations omitted.)

The U.S. Supreme Court has further explained that exercise of supplemental jurisdiction is a court function:

> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. . . .Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

1    *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130 (1966).

2         This Court lacks predicate jurisdiction for supplemental jurisdiction over the SAC's California

3    claims. The SAC demonstrates no right of plaintiffs to invoke this Court's subject matter jurisdiction.

4    There is no basis to invoke supplemental jurisdiction to support further dismissal of this action.

5                        **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

6         The lender defendants further challenge the SAC's claims as insufficiently pled and legally

7    barred to warrant dismissal under F.R.Civ.P. 12(b)(6).

8         "When a federal court reviews the sufficiency of a complaint, before the reception of any

9    evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether

10   a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

11   claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development

12   Corp.*, 108 F.3d 246, 249 (9ᵗʰ Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either

13   a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

14   theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9ᵗʰ Cir. 1990); *Graehling v. Village of

15   Lombard, Ill.*, 58 F.3d 295, 297 (7ᵗʰ Cir. 1995). A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency

16   of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9ᵗʰ Cir. 2001).

17        In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to

18   the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

19   can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80

20   F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that

21   are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead

22   Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9ᵗʰ Cir. 2008) (citation omitted). A court "need not

23   assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v.

24   Ringrose*, 788 F.2d 638, 643, n. 2 (9ᵗʰ Cir.1986), and must not "assume that the [plaintiff] can prove

25   facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been

26   alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*,

27   459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that

28   the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney,*

1  *Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

2          A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires

3  more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

4  do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations

5  omitted).   Moreover, a court "will dismiss any claim that, even when construed in the light most

6  favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan*

7  *Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain

8  either direct or inferential allegations respecting all the material elements necessary to sustain recovery

9  under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers,*

10  *Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

11          In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court

12  explained:

13          . . . a complaint must contain sufficient factual matter, accepted as true, to "state
        a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the
14      plaintiff pleads factual content that allows the court to draw the reasonable inference that
        the defendant is liable for the misconduct alleged. . . . The plausibility standard is not
15      akin to a "probability requirement," but it asks for more than a sheer possibility that a
        defendant has acted unlawfully.  (Citations omitted.)

16

17          After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive

18  [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be

19  plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d

20  962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

21          The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

22          First, the tenet that a court must accept as true all of the allegations contained in
        a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
23      a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second,
        only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
24      . Determining whether a complaint states a plausible claim for relief will . . . be a
        context-specific task that requires the reviewing court to draw on its judicial experience
25      and common sense. . . . But where the well-pleaded facts do not permit the court to infer
        more than the mere possibility of misconduct, the complaint has alleged – but it has not
26      "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

27          In keeping with these principles a court considering a motion to dismiss can
        choose to begin by identifying pleadings that, because they are no more than conclusions,
28      are not entitled to the assumption of truth. While legal conclusions can provide the

1  framework of a complaint, they must be supported by factual allegations. When there are
2  well-pleaded factual allegations, a court should assume their veracity and then determine
   whether they plausibly give rise to an entitlement to relief.

3  *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

4      Moreover, "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate

5  the existence of an affirmative defense." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069

6  (11th Cir. 1984).  For instance, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to

7  dismiss.  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision*

8  *Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982).

9  A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running

10 is apparent on the complaint's face.  *Jablon*, 614 F.2d at 682.  If the limitations defense does not appear

11 on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may

12 be raised by a motion to dismiss accompanied by affidavits.  *Jablon*, 614 F.2d at 682; *Rauch v. Day and*

13 *Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

14     Additionally, a court may consider exhibits submitted with the complaint.  *Durning v. First*

15 *Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987);*Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158,

16 1162, n. 2 (C.D. Cal. 2003).   A "court may consider evidence on which the complaint 'necessarily

17 relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim;

18 and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v.*

19 *Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  A court may treat such a document as "part of the complaint,

20 and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."

21 *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).  Such consideration prevents "plaintiffs from

22 surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their

23 claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[4]  A "court may disregard

24 allegations in the complaint if contradicted by facts established by exhibits attached to the complaint."

25 *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning*

26
27     [4]    "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document
28 in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

11

1   *v. First Boston Corp*., 815 F.2d 1265, 1267 (9th Cir.1987)).

2      With these standards in mind, this Court turns to the lender defendants' other challenges to the

3   complaint's claims.

4                                    **Failure To Tender**

5      The lender defendants challenge the SAC's negligence and wrongful foreclosure and eviction

6   claims in the absence of SAC allegations of Mr. Altmann's tender or ability to tender amounts owing

7   on his loan.

8      "A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds*

9   *Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ.

10  Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414

11  (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds*

12  *Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15.  "Nothing short of the full amount due the

13  creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount."

14  *Rauer's Law etc. Co. v. S. Proctor Co.,* 40 Cal.App. 524, 525, 181 P. 71 (1919).

15     A defaulted borrower is "required to allege tender of the amount of [the lender's] secured

16  indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah*

17  *v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S.

18  1081, 117 S.Ct. 746 (1997).  In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018,

19  1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

20          . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or
            procedure should be accompanied by an offer to pay the full amount of the debt for
21          which the property was security." . . . . This rule . . . is based upon the equitable maxim
            that a court of equity will not order a useless act performed. . . . "A valid and viable
22          tender of payment of the indebtedness owing is essential to an action to cancel a voidable
            sale under a deed of trust." . . .   The rationale behind the rule is that if plaintiffs could not
23          have redeemed the property had the sale procedures been proper, any irregularities in the
            sale did not result in damages to the plaintiffs.  (Citations omitted.)

24

25     An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state

26  a cause of action which a court of equity recognizes.  *Karlsen v. American Sav. & Loan Assn.*, 15

27  Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971).  The basic rule is that an offer of performance is of no

28  effect if the person making it is not able to perform.  *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851

1   (citing Cal. Civ. Code, § 1495).  Simply put, if the offeror "is without the money necessary to make the

2   offer good and knows it" the tender is without legal force or effect.  *Karlsen*, 15 Cal.App.3d at118, 92

3   Cal.Rptr. 851 (citing several cases).  "It would be futile to set aside a foreclosure sale on the technical

4   ground that notice was improper, if the party making the challenge did not first make full tender and

5   thereby establish his ability to purchase the property."  *United States Cold Storage v. Great Western*

6   *Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985).  "A cause of action

7   'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid

8   tender."  *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

9       "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without

10  paying the debt secured."  *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v.*

11  *Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain

12  an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475,

13  477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").  "A party

14  may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of

15  trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations

16  has run against the indebtedness."  *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

17      Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do

18  equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the

19  plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter

20  into the contract by the fraudulent representations of the defendant."  *Fleming v. Kagan*, 189 Cal.App.2d

21  791, 796, 11 Cal.Rptr. 737 (1961).  "A valid and viable tender of payment of the indebtedness owing

22  is essential to an action to cancel a voidable sale under a deed of trust."  *Karlsen,* 15 Cal.App.3d at 117,

23  92 Cal.Rptr. 851.  Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common

24  law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating

25  nonjudicial foreclosure sales."  *Residential Capital v. Cal-Western Reconveyance Corp.*, 108

26  Cal.App.4th 807, 820, 821, 134 Cal.Rptr.2d 162 (2003).

27      "The rules which govern tenders are strict and are strictly applied."  *Nguyen v. Calhoun*, 105

28  Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003).  "The tenderer must do and offer everything that is

1    necessary on his part to complete the transaction, and must fairly make known his purpose without

2    ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is

3    made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154,

4    1165, 246 Cal.Rptr. 421 (1988).  The debtor bears "responsibility to make an unambiguous tender of

5    the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney*, 200

6    Cal.App.3d at 1165, 246 Cal.Rptr. 421.

7          Neither the SAC nor record references Mr. Altmann's tender of indebtedness or meaningful

8    ability to do so.  In fact, the record reflects Mr. Altmann's need for loan modification, forbearance

9    agreements, and ultimate default to indicate an inability to tender amounts owed on his loan.  Silence

10   as to Mr. Altmann's tender of or ability to tender amounts outstanding is construed as his concession

11   of inability to do so.  Without Mr. Altmann's meaningful tender, plaintiffs seek empty remedies, not

12   capable of being granted, to support dismissal of the complaint's claims seeking to dispute the

13   foreclosure sale.

14   **Release**

15         The lender defendants contend that the September 1, 2008 forbearance agreement's release

16   precludes the SAC's claims.  The release provides:

17         Borrower, for himself, and on behalf of his respective agents, employees,
         representatives, affiliates, predecessors-in-interest, successors, and assigns (such persons
18       and entities other than Borrower are referred to collectively as the "Other Releasors"),
         does hereby release, discharge and acquit Lender, and its officers, directors, shareholders,
19       agents, employees, affiliates, predecessors, successors, heirs and assigns (collectively,
         the "Released Parties"), of and from any and all rights, claims, demands, obligations,
20       liabilities, indebtedness breaches of contract, breaches of duty or any relationship, acts,
         omissions, misfeasance, causes of action, promises, damages, costs, losses and expenses
21       of every kind, nature, description or character, and irrespective of how, why, or by reason
         of what facts, which could or may be claimed to exist, whether known or unknown,
22       suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether
         based on contract, tort, breach of any duty, or other legal or equitable theory or recovery,
23       each as though fully set forth herein at length (collectively, the "Claims"), which in any
         way arise out of, are connected with or relate to any or all of the following: (a) the Loan
24       or the administration of the Loan, as well as any action or inaction of the Released Parties
         or any of them with respect to the Loan or the administration thereof; (b) any or all of the
25       transactions which are the subject of or contemplated by any or all of the Loan
         Documents; (c) the Property; or (d) any fact, matter or transaction existing or occurring
26       as of or prior to the execution of this Agreement by the Parties and relating to the Loan
         . . .

27

28         The release includes a California Civil Code section 1542 waiver of unknown, existing claims.

14

1    California Civil Code section 1541 provides: "An obligation is extinguished by a release

2  therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without

3  new consideration."  Generally, "a written release extinguishes any obligation covered by the release's

4  terms, provided it has not been obtained by fraud, deception, misrepresentation, duress or undue

5  influence."  *Skrbina v. Fleming Companies, Inc.*, 45 Cal.App.4th 1353, 1366, 53 Cal.Rptr.2d 481

6  (1996).

7    "To be effective, a release need not achieve perfection . . . . It suffices that a release be clear,

8  unambiguous, and explicit, and that it express an agreement not to hold the released party liable for

9  negligence."  *National & Int'l Brotherhood of Street Racers, Inc. v. Superior Court*, 215 Cal.App.3d

10  934, 938, 264 Cal.Rptr. 44 (1989).

11    The lender defendants note that Mr. Altmann was provided consideration of foreclosure

12  forbearance in exchange for releasing claims against the lender defendants.  The lender defendants point

13  to the release's breadth to include the SAC's "exact claims," in particular those pertaining to loan

14  origination.  The lender defendants further note that Mr. Altmann was represented by counsel when

15  negotiating the forbearance agreement.

16    The lenders defendants are correct that the release is broad to cover claims "based on contract,

17  tort, breach of any duty, or other legal or equitable theory of recovery" and with respect to Mr.

18  Altmann's loan or its administration and transactions contemplated by loan documents.  The foreclosure

19  forbearance served as consideration for the release of claims.  The release serves as further grounds to

20  dismiss this action against the lender defendants.

21                                    **Property Addresses**

22    The lender defendants argue that SAC allegations regarding the property's two separate street

23  addresses have "no relevance" in that the property's APN of 002-063-014-000 includes both parcels and

24  street addresses.  The lender defendants note that plaintiffs have attributed the APN to the property's two

25  parcels in Mr. Altmann's verified complaint filed in the first state action: "The Property consists of 2

26  real property parcels commonly referred to as 16413 Sonora Road and 16419 Sonora Road, in Knights

27  Ferry, County of Stanislaus, State of California.  The APN for the Property is 002-063-014-000," the

28  identical APN used in loan and foreclosure documents.  The lender defendants point out that Stanislaus

1   County records attribute the APN to the 38.54-acre property and that Mr. Altmann's property listing

2   reflects 38.54 acres with "2 houses on Lot" and "Country Ranch Estate w/guest house."

3         Nothing demonstrates that the property's two street addresses and parcels is controlling.  The

4   record reveals reliance on the property's APN.  The SAC alleges no facts to distinguish the two street

5   addresses and parcels, especially given plaintiffs' judicial admission in a verified complaint that the APN

6   applies to the 38.54-card property as a whole.

7   **F.R.Civ.P. 11(c)(2) Sanctions Motion**

8         The lender defendants characterize the SAC as "a pattern of harassment and improper conduct

9   that requires sanctions."  The lender defendants seek to impose on plaintiffs a $14,466.38 sanction,

10  comprising:

11      1.    $10,587 attorney fees incurred to date at $335 and $250 hourly rates to defend this

12            action, including to prepare the motions to dismiss and for sanctions;

13      2.    $188.38 costs incurred to date to defend this action;

14      3.    $2,016 estimated attorney fees to prepare reply papers; and

15      4.    $1,675 estimated attorney fees for travel and hearing attendance.

16  F.R.Civ.P. 11(b) addresses representations to the Court and provides in pertinent part:

17        By presenting to the court a pleading, written motion, or other paper--whether by
18  signing, filing, submitting, or later advocating it--an attorney or unrepresented party
    certifies that to the best of the person's knowledge, information, and belief, formed after
19  an inquiry reasonable under the circumstances:

20        (1) it is not being presented for any improper purpose, such as to harass, cause
    unnecessary delay, or needlessly increase the cost of litigation;

21        (2) the claims, defenses, and other legal contentions are warranted by existing law
22  or by a nonfrivolous argument for extending, modifying, or reversing existing law or for
    establishing new law;

23        (3) the factual contentions have evidentiary support or, if specifically so
    identified, will likely have evidentiary support after a reasonable opportunity for further
24  investigation or discovery . . .

25  F.R.Civ.P. 11(c)(4) addresses the nature of sanctions a court may impose and provides in

26  pertinent part:

27        A sanction imposed under this rule must be limited to what suffices to deter
    repetition of the conduct or comparable conduct by others similarly situated. The
28  sanction may include nonmonetary directives; an order to pay a penalty into court; or, if

imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

In the end, this Court is empowered to "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." F.R.Civ.P. 11(c)(1).  However, a court is unable to impose a monetary sanction against a represented party for a F.R.Civ.P. 11(b)(2) violation, or in other words, for pursuit of frivolous claims.  *See* F.R.Civ.P. 11(c)(5)(A).

"The central purpose of Rule 11 is to deter baseless filings."  *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447 (1990) (partially superseded, on other grounds, by 1993 Rule 11 amendment).  Purposes of F.R.Civ.P. 11 sanctions include to deter dilatory or abusive pretrial tactics, to avoid delay and unnecessary expense, and to streamline litigation.  *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986).  "[S]anctions must be imposed on the signer of a paper if either (a) the paper is filed for an improper purpose, or (b) the paper is 'frivolous.'"  *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).  "Frivolous" denotes "a filing that is both baseless and made without a reasonable and competent inquiry."  *Townshend*, 929 F.2d at 1358.  F.R.Civ.P. 11 sanctions may be imposed when a portion, not the entirety, of a pleading is frivolous.  *See Townshend*, 929 F.2d at 1364-1365.

F.R.Civ.P. 11 "creates an objective standard  of 'reasonableness under the circumstances.'"  *Golden Eagle*, 801 F.2d at 1536; Advisory Committee Note, 97 F.R.D. 165, 198 (1983).  The Ninth Circuit Court of Appeals has articulated the objective reasonableness standard:

> As we have observed, the subjective intent of the pleader or movant to file a meritorious document is of no moment.   The standard is reasonableness.   The "reasonable man" against which conduct is tested is a competent attorney admitted to practice before the district court.

*Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986), *abrogated on other grounds, Cooter & Gull v. Hartmarx Corp.*, 496 U.S. 384, 399-400, 110 S.Ct. 2447 (1990).  "If, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time that the position is adopted, then sanctions should not be imposed."  *Golden Eagle*, 801 F.2d at 1538; *Zaldivar*, 780 F.2d at 832; *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2nd Cir. 1985).

F.R.Civ.P. 11 "imposes on any party who signs a pleading, motion, or other paper . . . an

affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the

applicable standard is one of reasonableness under the circumstances." *Business Guides, Inc. v.*

*Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 551, 111 S.Ct. 922 (1991).  The Ninth

Circuit has further explained:

> Sanctions should be imposed if (1) "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is [or other paper] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law" or if (2) "a pleading [or other paper] has been interposed for any improper purpose."

*Golden Eagle*, 801 F.2d at 1537 (quoting *Eastway,* 762 F.2d at 254); *see also McLaughlin v. Western*

*Casualty & Surety Co.*, 603 F.Supp. 978, 981 (S.D. Ala. 1985).

Prevailing on a motion or petition is not determinative:

> Thus the granting of a motion to dismiss the complaint for failure to state a claim, or the granting of a summary judgment against the pleader is not dispositive of the issue of sanctions.  The pleader, at a minimum, must have a "good faith argument" for his or her view of what the law is, or should be.  A good faith belief in the merit of a legal argument is an objective condition which a competent attorney attains only after "reasonable inquiry."  Such inquiry is that amount of examination into the facts and legal research which is reasonable under the circumstances of the case.

> . . . Thus, we affirm that Rule 11 sanctions shall be assessed if the paper filed in district court and signed by an attorney or an unrepresented party is frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith.

*Zaldivar*, 780 F.2d at 830-831.

For further guidance, the Second Circuit Court of Appeals has commented:

> Rule 11 "is targeted at situations 'where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands.'" . . .

*Associated Indemnity Corp. v. Fairchild Industries, Inc.*, 961 F.2d 32, 34 (2nd 1992).

Nonetheless, F.R.Civ.P. 11 "is not intended to chill an attorney's enthusiasm or creativity in

pursuing factual or legal theories."  F.R.Civ.P. 11 Adv. Comm. Notes (1983).  F.R.Civ.P. 11 "seeks to

strike a balance between the need to curtail abuse of the legal system and the need to encourage

creativity and vitality in the law."  *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483-484 (3rd Cir. 1987).

The lender defendants characterize the SAC as "legally unreasonable" and argue that the SAC

harasses them in that Mr. Altmann dismissed without prosecuting in the first state action the SAC's

1    "exact claims" for which this Court has no jurisdiction.  The lender defendants point the absence of

2    federal question jurisdiction given the SAC's failure to allege a viable TILA claim and "mere sporadic

3    mentions of alleged TILA violations."  The lender defendants accuse Mr. Villines of knowing or having

4    the ability to know of the absence of federal jurisdiction yet concealing this action for nine months after

5    its filing.  The lender defendants further accuse Mr. Altmann of knowingly violating the September 1,

6    2008 forebearance agreement's release "by filing this frivolous suit" after Mr. Villines "has been advised

7    of these issues."

8         The lender defendants characterize the SAC as "a series of frivolous actions" to harass them in

9    that plaintiffs' four actions against the lender defendants "revolve around the same loan and the same

10   allegations."  The lender defendants point to voluntary dismissal of the first state action immediately

11   followed by the concealed filing of this action and an additional lis pendens.  The lender defendants

12   equate the "inexcusable" nine-month delay to serve this action as an "improper purpose . . . to harass

13   defendants."  Defendants further argue that their harassment continues with the recent filing of the

14   second state action "based on the same facts and allegations in the previous actions."

15        The lender defendants are entitled to F.R.Civ.P. 11 sanctions.  Plaintiffs and Mr. Villines use this

16   and the other actions as a ploy to harass and vex the lender defendants.  The SAC alleges claims which

17   neither invoke this Court's jurisdiction nor are viable.  In short, the SAC is frivolous and has absolutely

18   no chance to succeed.  The SAC alleges no grounds to invoke federal question jurisdiction given the

19   time-barred, meritless purported claims arising under TILA.  The complaint alleges no grounds to

20   support diversity jurisdiction. This Court concludes that the SAC includes references to TILA for a mere

21   toe hold in federal court although no facts support a viable TILA claim.

22        The SAC's state law claims are also frivolous.  They are doomed in the absence of allegations

23   of Mr. Altmann's tender or ability to tender amounts owing on his loan.  Mr. Altmann's now-closed

24   Chapter 7 bankruptcy reflects his inability to tender.  Moreover, Mr. Altmann's release in the September

25   1, 2008 forbearance agreement bars his claims.  Mr. Altmann is unable to avoid the release.  The SAC's

26   property address allegations fail to support a claim and contradict the first state action allegations.

27        Imposition of sanctions in this case will serve the purpose to deter baseless filings.  As

28   demonstrated above, no reasonable basis exists to support the SAC.  As such, this Court easily concludes

1  that this action was filed to harass and vex the lender defendants.  No factual or legal rationale exists for

2  this action.  This action nowhere approaches creativity or vitality in the law and produces opposite

3  results.

4          Although the lender defendants appear to impose sanctions against plaintiffs themselves, their

5  papers indicate that they proceed pursuant to F.R.Civ.P. 11(b)(2).  The lender defendants challenge Mr.

6  Villines representations in papers signed by him.  As such, this Court may impose sanctions against only

7  Mr. Villines and not plaintiffs themselves.  *See* F.R.Civ.P. 11(c)(5)(A) ("The court must not impose a

8  monetary sanction . . . against a represented party for violating Rule 11(b)(2) . . .").

9          This Court next turns to the amount of sanctions.  This Court finds the $335 and $250 hourly

10  rates reasonable however questions the need for two attorneys and time devoted for these motions.  In

11  this Court's experience, 20 hours is sufficient to accomplish the defense of this action and preparation

12  of necessary papers.  In the absence of a hearing, no travel and corresponding fees are incurred.  This

13  Court gives the lender defendants the benefit of the higher $335 hourly rate and imposes as a sanction

14  $6,700 for attorney fees and $188.38 for costs for a total of $6,888.38.  This sanction will be imposed

15  on Mr. Villines alone and not on plaintiffs since it arises from the frivolous actions of and pleadings

16  prepared by Mr. Villines.

17                                    **CONCLUSION AND ORDER**

18          For the reasons discussed above, this Court:

19      1.      DISMISSES with prejudice this action against the lender defendants;

20      2.      DIRECTS the clerk to enter judgment in favor of defendants Homestead Mortgage

21              Income Fund, LLC, National Investment Mortgage Fund, LLC, Real Estate Lending

22              Group, Inc., Steven R. Belleville, and FCI Lender Services, Inc. and against plaintiffs

23              Ernie Altmann and Creative Builders, Inc. in that there is no just reason to delay to enter

24              such judgment given that the plaintiffs' claims against these defendants and their alleged

25              liability are clear and distinct from claims against and liability of other defendants.  *See*

26              F.R.Civ.P. 54(b);

27      3.      IMPOSES on Mr. Villines a $6,888.38 sanction payable to the lender defendants'

28              counsel; and

1    4.       ORDERS plaintiffs, no later than June 5, 2012, to file papers to show cause why this

2             Court should not dismiss this action against any remaining defendants, including Private

3             Money Brokers, Builders Control, LLC and RSVP Foreclosures.

4         **This Court ADMONISHES plaintiffs that this Court will dismiss this action against any**

5    **remaining defendants if the plaintiffs fail to comply with this order and fail to file timely papers**

6    **to show cause why this Court should not dismiss this action against any remaining defendants.**

7

8    IT IS SO ORDERED.

9    **Dated:    May 29, 2012**                        _____/s/ Lawrence J. O'Neill_____
                                                        UNITED STATES DISTRICT JUDGE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28